IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

JOHN A. HEBERT )
and DIANNA G. HEBERT, )
)
Plaintiffs, ) TC-MD 110830C
)
v. )
)
DEPARTMENT OF REVENUE, )
State of Oregon, )
)
Defendant. ) **DECISION**

Plaintiffs filed their Complaint on June 20, 2011, challenging Defendant's deficiency assessment for the 2007 tax year. A trial was held in the Tax Court Mediation Center on March 21, 2012. Kathleen M. Herbert, CPA, appeared on behalf of Plaintiffs. John A. Hebert (Hebert) testified on behalf of Plaintiffs. Shannon Johns (Johns) appeared on behalf of Defendant. Neither party submitted exhibits. As a preliminary matter, the parties clarified that the sole issue before the court is whether Plaintiffs' tax home was Alaska or Oregon for the 2007 tax year. Defendant concedes that, if Plaintiffs' tax home was Oregon, as Plaintiffs contend, than Plaintiffs' 2007 income tax return was correctly filed. Defendant maintains that Plaintiffs' 2007 tax home was Alaska.

## I. STATEMENT OF FACTS

Hebert testified that Plaintiffs purchased their residence in Sheridan, Oregon, in 1998. He testified that in 1998 Plaintiffs moved to San Mateo, California, to care for Dianne Hebert's mother, who was ill. Hebert testified that, around that time, Plaintiffs acquired "three acres with a trailer in the high desert" in Arizona through a property "trade" with friends of theirs.[1] He

---

[1] Hebert testified that Plaintiffs traded a property that they owned in Washington for the Arizona property.

testified that Plaintiffs would take Dianne Hebert's mother on road trips to the Arizona property; they all enjoyed the climate in Arizona. Hebert testified that between 1998 and 2001 Plaintiffs rented the Sheridan, Oregon, residence to a tenant with an option to buy. He testified that Plaintiffs' tenant passed away in 2001, and Plaintiffs traveled to Oregon to "drop off" their belongings, then traveled to Alaska where Hebert began work for Coastal Helicopters on July 1, 2001. Hebert testified that Plaintiffs returned to Oregon at the end of the 2001 season and stayed with his mother in Willamina, Oregon, while they worked on the house in Sheridan.

Hebert testified that he first worked for Coastal Helicopters in Alaska during the summer tourism season beginning in 2001.[2] He testified that Plaintiffs were close to the "Wilsons," who owned and operated Coastal Helicopters from 1988 until they sold the business in 2007. Hebert testified that beginning in 2002 he worked as a manager for Coastal Helicopters and, as such, assumed more responsibility each year. Hebert testified that he never had a written contract with Coastal Helicopters and he never received "benefits." He testified that his agreement with the Wilsons to work for Coastal Helicopter was always by "word of mouth."

Hebert testified that when the Wilsons sold Coastal Helicopters in 2007,[3] they asked Hebert if he would continue as the manager for the company during the transition and he agreed. He testified that his agreement to continue for another season after 2007 was a verbal "gentleman's agreement." Hebert testified that in 2007 he had wanted to leave Alaska and the helicopter business to focus on his car dealership business in Oregon. He testified that even when he agreed to return as manager of the helicopter business for the transition period, his hope was that it would only be for one more summer.

_____

[2] Hebert testified that the summer tourism season runs from May 1 through September 30. He testified that he became a manager for Coastal Helicopters in 2002 and had to begin work prior to May 1, 2002.

[3] Hebert testified that he could not recall the date of the sale, but he thinks it was between August and December, 2007. He testified that the Wilsons approached him about continuing for another year prior to the sale.

Hebert testified that Plaintiffs "effectively retired" and moved into their current residence in Sheridan, Oregon, in 2004. He testified that, also in 2004, he registered a business name with the Oregon Secretary of State for his car dealership business, through which he purchased relatively new cars, made some repairs, and then sold the cars. Hebert testified that he had been purchasing, fixing up, and selling cars since before 2004 and that he continued with those activities in 2007 and subsequent years. In response to a question from Johns, Hebert agreed that, for "tax purposes," his car dealership business was not active after 2006; in 2007 and in subsequent years, it was a "hobby" for "tax purposes." Hebert testified that, when Plaintiffs moved to Oregon, it was his intent to set up his car dealership business to supplement Plaintiffs' retirement income. He testified, however, that he only received income for his car dealership business for two years, 2005 and 2006.[4] Hebert testified that he discovered that his car dealership business conflicted with his work in Alaska because the best time to sell cars is during the summer, which is also the tourist season in Alaska. He testified that his mother and other family members would help out with his business while he was in Alaska.

## II. ANALYSIS

The issue before the court is whether Plaintiffs may deduct certain business travel expenses associated with Hebert's employment in Alaska for the 2007 tax year under IRC section 162.[5] This court has previously held that the Oregon Legislative Assembly "intended to make Oregon personal income tax law identical to the [IRC] for purposes of determining Oregon

/ / /

/ / /

---

[4] Hebert testified that, as of the date of trial, his business name is still registered with the Oregon Secretary of State.

[5] All references to the Internal Revenue Code (IRC) and accompanying regulations are to the 1986 code, and include updates applicable to 2007.

taxable income, subject to adjustments and modifications specified in Oregon law." *Ellison v. Dept. of Rev.,* TC-MD No 041142D, WL 2414746 at *6 (Sept 23, 2005) (citing ORS 316.007) (footnote omitted). "On this question, Oregon law makes no adjustments to the rules under the [IRC] and therefore, federal law governs the analysis." Order Denying Plaintiffs' Amended Motion For Summary Judgment And Granting Defendant's Cross-Motion For Summary Judgment, *Porter v. Dept. of Rev.*, TC No 4789, WL 3365847 at *1 (Oct 20, 2009); ORS 316.007, ORS 316.012(1).[6] "Further, the view of the Commissioner of Internal Revenue as to the legal analysis is always dispositive." *Id.*; ORS 314.011(3).

IRC section 162(a) allows a deduction for travel expenses incurred in connection with a trade or business, stating in pertinent part:

> "There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including--
>
> "* * * * *
>
> "(2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business.
>
> "* * * * *
>
> "For purposes of paragraph (2), the taxpayer shall not be treated as being temporarily away from home during any period of employment if such period exceeds 1 year."

The parties agree that the only issue before the court is whether Plaintiffs' tax home under IRC section 162 was Oregon or Alaska for the 2007 tax year.

///

///

---

[6] All references to the Oregon Revised Statutes (ORS) are to 2005.

"In general, a taxpayer's home for the purposes of section 162(a)(2)--*i.e.,* the taxpayer's 'tax home'--is the taxpayer's principal place of business or employment." *Morey v. Dept. of Rev.*, 18 OTR 76, 81 (2004) (citations omitted). The general rule that a taxpayer's home is that taxpayer's principal place of business or employment "is subject to an exception: the taxpayer's personal residence is the individual's tax home if the principal place of business is 'temporary,' as opposed to 'indefinite' or 'indeterminate.' That exception is in turn subject to an exception found in the flush language of section 162(a), which provides that any employment period in excess of one year is *per se* indefinite." *Id.* at 81 (citations omitted).

Commuting expenses are not deductible travel expenses under IRC section 162. *See* Treas Reg § 1.162-2(e) ("Commuters' fares are not considered as business expenses and are not deductible.") IRC section 262 disallows deductions for "personal, living, or family expenses." In the accompanying treasury regulation, the "costs of commuting to [the taxpayer's] place of business or employment" are specifically identified as personal expenses that are not deductible. Treas Reg § 1.262-1(b)(5); *see also* Rev Rul 99-7, 1999-1 CB 361 (stating that "[i]n general, daily transportation expenses incurred in going between a taxpayer's residence and a work location are nondeductible commuting expenses"). The Supreme Court has long held that expenses a taxpayer incurs in commuting between his home and place of business are personal and nondeductible. *See Comm'r v. Flowers* (*Flowers*), 326 US 465, 473-74, 66 S Ct 250, 90 L Ed 203 (1946). "Deductions are strictly a matter of legislative grace, and taxpayers must satisfy the specific requirements for any deduction claimed." *Gapikia v. Comm'r*, 81 TCM (CCH) 1488 (2001) (citations omitted).

Plaintiffs argue that Hebert's work for Coastal Helicopter was "strictly seasonal work" that lasted less than six months of the year and was, therefore, temporary in nature. Plaintiffs

argue that they considered Oregon to be their tax home in 2007 and hoped that Hebert's car dealership business would be profitable. Plaintiffs note that it would have been very expensive to move to Alaska for temporary, seasonal work. Defendant agrees that Hebert was a seasonal employee, but argues that seasonal jobs to which taxpayers return year after year and with an expectation that they will return in subsequent years are not temporary. Defendant notes that Hebert built his business model for the car dealership business around his work for the helicopter business and the tourist season in Alaska. Defendant further notes that, in 2007, Plaintiffs' only employment, and only source of income other than social security, was Hebert's work for Coastal Helicopter. Defendant maintains that Plaintiffs' tax home was Alaska in 2007.

Revenue Ruling 75-432, 1975-2 Cumulative Bulletin 60, states that "a seasonable job that is not ordinarily filled by the same individual year after year" is a "temporary" job and "[s]uch an employee is generally regarded as being in a travel status for the duration of such a temporary assignment." However, "[a] seasonal job to which an employee regularly returns, year after year, is regarded as being permanent rather than temporary employment"; it is "a regularly recurring post of duty." *Id*. Even when the taxpayer has

> "the same two recurring, seasonal places of employment, * * * the tax home does not shift during alternate seasons from one business location to the other, but remains stationary at the principal post of duty throughout the taxable year. In each case of this nature, a factual determination must be made in order to establish which of the seasonal posts of duty is the principal post of duty."

*Id.*

In *Seeto v. Department of Revenue* (*Seeto*), the taxpayer, a "timber faller for over 28 years," was employed by a logging company in Alaska during the tax year at issue. TC-MD No 000038D, WL 454685, at *1 (Mar 23, 2001). The taxpayer in *Seeto* provided a letter from his employer in Alaska stating that taxpayer was a "seasonal employee" and that the employer

"hire[d] men back as the need arises, seasons to season. There are no promises of employment from anyone year to year." *Id*. He maintained a home in Oregon and that is where his family lived. *Id.* During the tax year at issue, the taxpayer worked for the majority of the year in Alaska and less than 60 days in Oregon and Washington. *Id.* at *2. Citing Revenue Ruling 75-432, the court in *Seeto* found that the taxpayer has a "regularly recurring post of duty" in Alaska and, as a result, Alaska was his "regular or principal place of business" or "tax home." *Id.* at *3, *4.

This court reached the same conclusion in *Buccina v. Department of Revenue* (*Buccina*), involving a taxpayer who, during the tax years at issue, worked as "an instructor for mentally handicapped children" in California for part of the year, although she was otherwise "retired" in Oregon. TC-MD No 020990C, WL 22272164 at *1 (Jul 25, 2003). Prior to her "retirement," the taxpayer had worked as an instructor for the California employer. *Id.* When she announced her retirement, the employer "offered to continue her insurance, provided she worked a minimum of 47 days each school year." *Id.* The taxpayer's continued employment was "contingent upon a number of factors" and was "classified by the [employer] as 'temporary.' " *Id.* The employer was "not required to extend an offer [to taxpayer] in any given year." *Id.* Citing *Flowers*, the court in *Buccina* found that there was no "direct connection" between the taxpayer's travel expenses and " 'the carrying on of the trade or business of the taxpayer[.]' " *Id.* at *3. Rather, the expenses were " 'incurred solely as the result of the taxpayer's desire to maintain a home in [Oregon] while working in [California].' " *Id.* The court found that the taxpayer's "tax home" was California. *Id.*

Plaintiffs argue that Hebert's work in Alaska in 2007 was seasonal, "temporary" work. However, it is clear from Revenue Ruling 75-432 and case law that "[a] seasonal job to which an

employee regularly returns, year after year," is permanent, rather than temporary employment. In 2007, Hebert had returned to Alaska to work for Coastal Helicopters each summer since 2001. Although he had no written contract for employment from year to year, he had a verbal agreement with the Wilsons. As noted by Johns, Hebert had no other employment or source of income in 2007. Accordingly, the court finds that Hebert's tax home was Alaska in 2007.

### III. CONCLUSION

After carefully considering the testimony and evidence presented, the court finds that Hebert's tax home was Alaska for the 2007 tax year. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiffs' appeal is denied.

Dated this ____ day of June 2012.

_____
ALLISON R. BOOMER
MAGISTRATE

*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within 60 days after the date of the Decision or this Decision becomes final and cannot be changed.*

*This document was signed by Magistrate Allison R. Boomer on June 20, 2012. The Court filed and entered this document on June 20, 2012.*